UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LATAUSHA SIMMONS,

                              CASE NO. 2:11-CV-14936
          Plaintiff,             JUDGE BERNARD A. FRIEDMAN
                              MAGISTRATE JUDGE PAUL J. KOMIVES

v.

WAYNE COUNTY COMMUNITY
COLLEGE DISTRICT,

          Defendant,

_____/

## REPORT AND RECOMMENDATION REGARDING DEFENDANT WCCCD'S DECEMBER 5, 2011 MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. Ent. 6)

Table of Contents

I.       RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.     Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.     Pending Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      C.     Fed. R. Civ. P. 12(c) ("Motion for Judgment on the Pleadings.") . . . . . . . . . . . . . . . . . . . . . . 4
      D.     Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
           1.     Plaintiff's Original Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
           2.     Defendant's arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
           3.     Plaintiff's response . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
           4.     Defendant's reply . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
           5.     Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
               a.     Plaintiff's original complaint fails to allege that she has a life, liberty or property interest entitled to constitutional protection. . . . . . . . . . . . . . . . . . . . . . . . . 13
               b.     The allegations in plaintiff's original complaint are not sufficient to establish "arbitrary conduct[.]" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
               c.     Plaintiff's original complaint fails to allege a state law breach of contract claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

1

I.    **RECOMMENDATION:**  The Court should grant defendant WCCCD's December 5, 2011 motion for judgment on the pleadings (Doc. Ent. 6).

Plaintiff's May 29, 2012 motion to amend complaint (Doc. Ent. 21) should be addressed after the Court rules upon defendant WCCCD's December 5, 2011 motion for judgment on the pleadings (Doc. Ent. 6).

II.    **REPORT:**

A.    **Background**

Plaintiff Latausha Simmons, via attorney John G. Makris, originally filed this lawsuit in Wayne County Circuit Court on October 26, 2011 against defendant Wayne County Community College District (WCCCD).  Doc. Ent. 1-1 (Case No. 11-013069-CZ).  Defendant WCCCD removed the case to this Court on November 9, 2011.  Doc. Ent. 1.

On November 11, 2011, WCCCD filed an answer to the complaint and notice of affirmative defenses.  Doc. Ent. 2.  On November 18, 2011, WCCCD filed a first amended answer to the complaint and notice of affirmative defenses.  Doc. Ent. 3.

On November 21, 2011, plaintiff informed the Court that attorney Makris's representation had been terminated.  Doc. Ent. 5.  On April 2, 2012, attorney Benjamin Whitfield, Jr., filed an appearance on behalf of plaintiff.  Doc. Ent. 15.

B.    **Pending Motions**

Judge Friedman has referred this case to me to conduct pretrial matters.  Doc. Ent. 7. Currently before the Court are two (2) motions:[1]

---

[1] In addition to these two motions, my July 13, 2012 report and recommendation (Doc. Ent. 27) regarding plaintiff's January 31, 2012 motion to voluntarily dismiss complaint without prejudice (Doc. Ent. 11) and defendant's May 14, 2012 motion to permit filing of a reply brief

2

1.      On December 5, 2011, defendant WCCCD filed a motion for judgment on the pleadings (Doc. Ent. 6).  On December 13, 2011, I entered an order setting the deadline for plaintiff's response for January 31, 2012.  Doc. Ent. 8.

On May 14, 2012, I conducted a status conference.  The following day, on May 15, 2012, I entered an order setting plaintiff's response deadline for May 29, 2012.  Doc. Ent. 20.

On May 29, 2012, plaintiff, via attorney Whitfield, filed a response.  Doc. Ent. 22. Referring to her simultaneously filed motion to amend (Doc. Ent. 21) and proposed first amended complaint (Doc. Ent. 23), plaintiff contends that "any judgment on Plaintiff's original complaint would be premature, should this Court grant leave to amend."  Doc. Ent. 22 at 3.

On May 31, 2012, defendant WCCCD filed a reply.  Doc. Ent. 24.

2.      On May 29, 2012 - the same day she filed her response to defendant's dispositive motion - plaintiff, via attorney Whitfield, filed a motion to amend complaint (Doc. Ent. 21), along with a proposed first amended complaint (Doc. Ent. 23).

The proposed first amended complaint describes the parties, including John Doe defendants (¶¶ 1-3), and contains a statement of jurisdiction (¶ 4).  Furthermore, it describes the facts underlying the complaint, including citations to the WCCCD Student Handbook subsections on "Complaint Procedures: Code of Ethics Violations" and "Complaint Procedures: Student Code of Conduct" (¶¶ 5-21).  It also sets forth two counts: (I) violations of 42 U.S.C. § 1983, within which she alleges violation of her right to free speech by retaliation and violations of procedural and substantive due process rights, as well as representing that she was dismissed from WCCCD's Nursing Program (¶¶ 22-28) and (II) false imprisonment (¶¶ 29-34).  Then, it

_____

(Doc. Ent. 19) is under consideration by Judge Friedman.

describes plaintiff's alleged damages, including compensatory and punitive damages, as well as costs and attorney fees (¶¶ 35-38). Additionally, it contains a request for immediate injunctive relief, within which is a request to permit plaintiff "to return to classes at WCCCD Nursing Program pending the outcome of this litigation[,]" (¶¶ 39-40). *See* Doc. Ent. 23.

Defendant WCCCD filed a response on June 4, 2012 (Doc. Ent. 25).[2]

**C.     Fed. R. Civ. P. 12(c) ("Motion for Judgment on the Pleadings.")**

"After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Only these pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations

---

[2]Attached to the response are copies of *Litten v. Barton Malow, Co.*, No. 299727, 2011 WL 5866927 (Mich. App. Nov. 22, 2011) (Doc. Ent. 25-1); *McGee v. Schoolcraft Community College*, 167 Fed.Appx. 429 (6th Cir. 2006) (Doc. Ent. 25-2, Doc. Ent. 25-3); and *McCarthy v. Scofield*, No. 284129, 2009 WL 3235639 (Mich. App. Oct. 8, 2009) (Doc. Ent. 25-4).

omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

Although the Supreme Court's decisions in *Iqbal* and *Twombly* were reviews of motions to dismiss, the Sixth Circuit "has applied the now-familiar pleading requirements outlined in *[Twombly]* and *Iqbal* to Rule 12(c) motions and held that plaintiffs must 'plead ... factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012) (quoting *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (citation and internal quotation marks omitted)). *See also Patterson v. Novartis Pharmaceuticals Corp.*, 451 Fed.Appx. 495, 497 (6th Cir. 2011); *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) ("The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.") (citation omitted).

**D.      Discussion**

**1.      Plaintiff's Original Complaint**

Within her October 26, 2011 complaint, plaintiff represents that she "is and has been a student at [WCCCD] since on or about January 18, 2011 and is enrolled in the Nursing Program at [WCCCD's] Northwest Campus[.]" Doc. Ent. 1-1 ¶ 3.  Since on or about September 1, 2011, plaintiff alleges, she "has been substantively and procedurally denied her right to attend classes, obtain instruction, and be on campus as a student and to enjoy the rights of a student to an education at [WCCCD] in violation of the United States Constitution, Michigan Constitution and

the published Rules and Procedures of [WCCCD]" due to certain actions of WCCCD.  Doc. Ent. 1-1 ¶ 4.

Specifically, plaintiff alleges that she sought a meeting with a WCCCD administrator "regarding a class that was cut short by an instructor[.]"  On or about September 13, 2011, plaintiff met with Dean Doreesa Lewis and "was told she was not to go to clinicals . . . the 19th and 20th unless she put something in writing (incident report) but was not told why or provided any written reason or complaint communication other than to set forth her concerns and that there were alleged complaints from other students about her."  Doc. Ent. 1-1 ¶ 4a.[3]  Plaintiff claims to have prepared and submitted such a statement to Dean Lewis.  Doc. Ent. 1-1 ¶ 4b.

By a September 16, 2011 letter from WCCCD, plaintiff was placed on clinical probation (Doc. Ent. 1-1 at 10).  This letter was handed to plaintiff by Dean Lewis in Instructor Wofford's presence.  Plaintiff claims this letter "was factually incorrect and made several unsubstantiated allegations/statements."  Doc. Ent. 1-1 ¶ 4c.

On September 19, 2011, during plaintiff's Nursing lecture, Dean Lewis "appeared and told [plaintiff] in person and in front of the entire lecture class to not attend her scheduled clinicals on the 20th but rather to see Dean Shavers, thus embarrassing and humiliating Plaintiff. No reason was given by Dean Lewis."  Doc. Ent. 1-1 ¶ 4d.  Plaintiff received a call to meet with Andrea Juarez, Chief Academic Officer, and, on September 22, 2011, without prior notice, plaintiff was brought before a Mediation Committee "where she was told there were a 'slew' of complaints made against her by other students and asked 'what were her concerns' while

_____

[3]Incident reports are mentioned in the WCCCD Student Handbook under "Complaint Procedures: Student Code of Conduct."  Doc. Ent. 1-5 at 20 (p. 48).

refusing to provide her with any copies of any complaints, refusing to tell her who made the complaints and refusing to tell her of what the substance of any alleged complaint consisted." Doc. Ent. 1-1 ¶ 4e.[4]

Plaintiff claims she was denied due process as set forth in the Student Handbook or Nursing Program Handbook.  Doc. Ent. 1-1 ¶ 5.[5]  For example, she claims "[n]o prior notice was given [to her] about being brought before this committee or the reason for the meeting[,]" Doc. Ent. 1-1 ¶ 5a; "[n]o copies of any complaints by any other student or by any instructor were provided to [her], although requested[,]" Doc. Ent. 1-1 ¶ 5b; and "[n]o discussion was had regarding any course or clinical work of [hers] and no prior meeting was held with any instructor regarding any claimed deficiency by [her] in her clinical work[,]" Doc. Ent. 1-1 ¶ 5c.

Plaintiff attempted to attend clinical instruction on September 27, 2011 but "was stopped by the instructor who called campus security and had Plaintiff physically detained and then removed from the class and campus, again with no justification and no explanation given."  Doc. Ent. 1-1 ¶ 6.  As a result, plaintiff "was humiliated and embarrassed in front of her classmates and the hospital staff present[,]" Doc. Ent. 1-1 ¶ 6a, and she "was held against her will by security at the direction of [WCCCD's] staff[,]" Doc. Ent. 1-1 ¶ 6b.

By a September 27, 2011 electronic mail from Andrea Juarez, WCCCD's Northwest Campus Chief Academic Officer, Juarez explained that plaintiff's September 16, 2011 placement

---

[4]Mediation Committee is mentioned within "Complaint Procedures: Code of Ethics Violations."  Doc. Ent. 1-5 at 16 (p. 42).

[5]The WCCCD Student Handbook provides "Complaint Procedures" for "Academic and Grade Regulations," "Code of Ethics Violations," and "Student Code of Conduct[.]" It also provides a "Requesting Grade Changes - Grade Appeal Process[.]"  See, i.e., Doc. Ent. 1-4 at 3 (Table of Contents).

on clinical probation "was a result of several documented faculty and student concerns related to lack of clinical skill, lack of critical thinking, inappropriate communication, disruptive behavior and overall lack of preparedness for the clinical setting."  Juarez further noted that these acts "violate [WCCCD's] Student Code of Conduct as well as the Nursing Student Handbook." Additionally, Juarez explained that the Mediation Committee was called to order "after receiving reports that the conditions set forth for the clinical probation were breached and after you submitted a counter complaint against students and the clinical faculty member Ms. Wofford." Also, Juarez's letter noted the Mediation Committee's agreement that plaintiff had not followed "District, Campus, and Program processes in reporting complaints and/or concerns related to [her] clinical assignment, students, and faculty[,]" and that plaintiff had breached certain provisions of the WCCCD Student Code of Conduct.[6]  Juarez also communicated the Mediation Committee's agreement that plaintiff's conduct "warrants [her] removal from the Nursing Program."  Finally, Juarez stated:

> Effective immediately, you are not to return to any nursing or nursing related course, nor are you to make contact with the clinical site(s).  You may seek re-admittance after completing the Nursing Mentoring Program and following the process outlined in the Nursing Student Handbook.

*See* Doc. Ent. 1-1 at 11, Doc. Ent. 1-1 ¶¶ 7, 9.

Plaintiff claims she was not "advised verbally or in writing that there was an allegation made claiming that she had terrified, intimidated, threatened or harassed another person within the definition of 'psychological actions' and named no purported 'victim' no date or details of any such claim and no opportunity to defend herself before any committee or other

---

[6]The reasons are among those listed in WCCCD's Student Handbook under "Student Code of Conduct Violations."  Doc. Ent. 1-5 at 18 (p. 46).

administrative authority." Doc. Ent. 1-1 ¶ 8.

Plaintiff's written appeal is dated October 1, 2011. Therein, she alerts the recipients to "substantive and procedural violations of the disciplinary process by the administration representatives that amount to a denial of due process and violate [her] rights as a student at [WCCCD]." It was stamped received on October 4, 2011. Doc. Ent. 1-1 at 12-14; *see also* Doc. Ent. 1-1 ¶ 10.

According to plaintiff, the administration through Juarez "unilaterally and without any prior notice to Plaintiff 'convert[ed]' the disciplinary action regarding alleged conduct" to an academic issue. Doc. Ent. 1-1 ¶ 11. Specifically, Juarez's October 10, 2011 letter informed plaintiff that "a decision has been made to allow you to continue in the Nursing Program at WCCCD. However, as you have failed to meet all the objectives in the clinical portion of NUR 116, you will receive a failing grade ("E") in that course."[7] The letter also advised:

> As stated in the Nursing Student Handbook, upon a first NUR course failure the student will be placed on probation and must complete a mentoring program before repeating the course. A student cannot proceed to another NUR course until both the clinical and theory components of previous courses are successfully completed. Please contact the Nursing Office for information on how to proceed with the mentoring program.

Additionally, it referred plaintiff to the WCCCD Student Handbook "Grade Appeal Process." Finally, the letter stated, "[a]n additional course failure and/or violation of the Student Code of Conduct, Student Ethics Code, or Nursing Handbook will result in dismissal from the Nursing Program." Doc. Ent. 1-1 at 15.

According to plaintiff, she tried to contact the Nursing Office for information about the

---

[7]Plaintiff's undated WCCCD "NUR 116: Medical Surgical Nursing II" Clinical Evaluation shows "Satisfactory" assessments for Weeks 1 through 4 (Doc. Ent. 1-1 at 21-24).

mentoring program; however, she "was ignored by the office staff, could not get any information, and found no references or information in any student handbook regarding any 'mentoring program'."  Doc. Ent. 1-1 ¶ 12.  Furthermore, plaintiff contends, she "has received no notice from any instructor that she was failing or had failed or even had yet received any grade for NUR 116, which class had not yet finished when she received the letter from administrator Juarez telling her she had failed."  Doc. Ent. 1-1 ¶ 13.

Plaintiff filed written appeals of her failing grade in NUR 116 (clinical and theory) - one on October 16, 2011, which was received on October 18, 2011 (Doc. Ent. 1-1 at 16-17), and the other on October 20, 2011, which appears to have been accompanied by a WCCCD "Final Grade Appeal Student's Statement Form," (Doc. Ent. 1-1 at 18-20).  However, for various reasons which she lists (¶¶ 14a, 14b, 14c & 14d), plaintiff believes these administrative appeals will be "futile and unfair."  Doc. Ent. 1-1 ¶ 14.

Within her request for immediate ex parte relief (temporary restraining order), plaintiff explains that "in order to continue her studies uninterrupted and in a timely manner[,] [she] needs to attend and participate in the new semester which started Tuesday, October 18, 2011 with Clinicals for Course number NUR 114 and Lectures on Wednesday October 19, 2011."  Doc. Ent. 1-1 ¶ 15.  She also makes several statements in support of this request.  *See* Doc. Ent. 1-1 ¶¶ 15a-15h.[8]

Following the October 26, 2011 filing of plaintiff's original complaint in Wayne County Circuit Court, Judge Amy P. Hathaway entered an October 27, 2011 order to show cause (Doc.

---

[8]Plaintiff's October 26, 2011 state court complaint appears to have been nine (9) pages in length.  If so, Page No. 8 is missing from this record.  *See* Doc. Ent. 1-1 at 2-9.

Ent. 1-2) "why the Temporary Restraining Order requested by Plaintiff should not be granted."

A handwritten portion of this order provides:

> IT IS FURTHER ORDERED that Plaintiff shall submit to this Court a copy of Defendant's Student Handbook and show, in more detail, how her employment would be effected if she cannot attend classes while this case and/or her administrative appeal is pending.

Doc. Ent. 1-2.

On November 1, 2011, plaintiff executed an affidavit in support of her request for immediate (or ex parte) relief (Doc. Ent. 1-3 at 2-4), to which was attached a Shore Pointe Village Assisted Living Facility Caretaker/Medication Tech/CNA Job Description (Doc. Ent. 1-3 at 5-10). It also appears that plaintiff supplied the Wayne County Circuit Court with a copy of the WCCCD Student Handbook, revised January 2010 (Doc. Ent. 1-4, Doc. Ent. 1-5).[9]

**2.      Defendant's arguments**

In its December 5, 2011 motion, WCCCD claims that plaintiff "has no 'property interest' entitling her to due process protections and, therefore, her claims should be dismissed." Doc. Ent. 6 at 1. Even if she has a property interest, WCCCD claims, "her Complaint allegations establish that the academic decisions at issue were not arbitrary and involved the exercise of professional judgment by [WCCCD's] faculty." Doc. Ent. 6 at 1-2.

**3.      Plaintiff's response**

In her May 29, 2012 response, plaintiff contends that WCCCD's decision began with allegations of student misconduct but ended as based upon academic failure. Specifically,

---

[9]The WCCCD Student Handbook appears to be fifty-three (53) pages in length. Doc. Ent. 1-4 at 3 (Table of Contents). However, pages 44-45 and 50-52 are missing from this Court's record.

plaintiff contends that "Defendants made a premature decision at mid-semester that Plaintiff 'would be receiving a failing grade' in one of her clinical nursing courses. As of this writing, Plaintiff is not enrolled at WCCCD, and has not been allowed to re-enroll in the WCCCD Nursing Program, nor is she allowed on the campus." Doc. Ent. 22 at 1.

Plaintiff contends that, the prohibitions "from attending classes, going to the clinical site, and from being on campus for any reason[,]" while her administrative grade appeal was pending, were restrictions stemming "from a pretextual determination to punish Plaintiff for certain statements critical of an instructor's decision." Doc. Ent. 22 at 1-2. Thereafter, plaintiff claims, she "was told by a WCCCD Administrator that there [are/were] a 'slew of complaints' from other students and faculty against her." According to plaintiff, her request of a copy of these complaints has been denied. Doc. Ent. 22 at 2.

It is plaintiff's position that WCCCD originally alleged that plaintiff had exhibited behavior which amounted to student misconduct but, having no such evidence, "ultimately decided to take the easier route and allege an academic failure, though it was only mid-semester and Plaintiff, to that point, had received a grade of 'satisfactory' in all of her classes and clinical assignments." Therefore, plaintiff claims, she "was removed from the WCCCD Nursing Program." Doc. Ent. 22 at 2.

### 4.    Defendant's reply

In its May 31, 2012 reply, WCCCD argues that (A) "Plaintiff has failed to allege she has a 'property interest'[;]" (B) "[t]he complaint allegations establish that defendant made 'academic' - not 'disciplinary' - decisions[;]" and (C) "Plaintiff's assertions of facts [in her May 29, 2012 response] [are] not contained in the [October 26, 2011] complaint[.]" Doc. Ent. 24 at

12

1-5.

**5.      Conclusion**

**a.      Plaintiff's original complaint fails to allege that she has a life, liberty or property interest entitled to constitutional protection.**

    **I.**       WCCCD argues that the allegations in plaintiff's October 26, 2011 complaint are insufficient has a matter of law, because plaintiff "has failed to allege that she has a property interest[,]" Doc. Ent. 6 at 9-11.  Specifically, WCCCD relies upon *Regents of University of Michigan v. Ewing*, 474 U.S. 214 (1985), wherein "[r]espondent Scott Ewing was dismissed from the University of Michigan after failing an important written examination."  *Ewing*, 474 U.S. at 215.  The Supreme Court considered "whether the University's action deprived Ewing of property without due process of law because its refusal to allow him to retake the examination was an arbitrary departure from the University's past practice."  *Ewing*, 474 U.S. at 215.  In its analysis, the Court assumed that Ewing's "property interest gave rise to a substantive right under the Due Process Clause to continued enrollment free from arbitrary state action[.]"  *Ewing*, 474 U.S. at 223.

    It is WCCCD's contention that *Ewing* is distinguishable, because, in contrast to Ewing's failure of an important examination, plaintiff's October 26, 2011 complaint states that she "is and has been a student at [WCCCD] since on or about January 18, 2011 and is enrolled in the Nursing Program[,]" Doc. Ent. 1-1 ¶ 2.  WCCCD asserts that this is a "critical factual distinction[,]" because "neither the Supreme Court, nor the Sixth Circuit Court of Appeals, has ever held (or even assumed), that a student has a property interest in a passing grade."  Doc. Ent. 6 at 10.

    Furthermore, relying upon *Coastland Corp. v. Currituck County*, 734 F.2d 175 (4th Cir.

13

1984),[10] WCCCD contends that "even if Plaintiff had alleged a state law claim of 'breach of contract' based on the Student Handbook and Nursing Program publications, such an allegation is insufficient to establish a property interest."  Doc. Ent. 6 at 10-11.

Finally, relying upon *Gazette v. City of Pontiac*, 212 Mich.App. 162, 536 N.W.2d 854 (1995),[11] WCCCD contends that its "legal analysis is equally applicable to Plaintiff's due process violation claims based on the United States and Michigan Constitutions."  Doc. Ent. 6 at 11.

**ii.**     It is plaintiff's position that she has "a protected liberty interest (grounded on maintaining her reputation) and a property interest (in remaining a WCCCD student and receiving the actual grades she had earned)."  Therefore, plaintiff contends, "it cannot be said that [WCCCD's] decision to exclude Plaintiff from the WCCCD Nursing Program was anything other than arbitrary or capricious."  Doc. Ent. 22 at 2.

**iii.**     In reply, WCCCD points to Juarez's October 10, 2011 letter, which informed plaintiff that "a decision ha[d] been made to allow [her] to continue in the Nursing Program at WCCCD[;]" she would receive a grade of "E" in NUR 116; and "[a]s stated in the Nursing Student Handbook, upon a first NUR course failure the student will be placed on probation and must complete a mentoring program before repeating the course[,]" Doc. Ent. 1-1 at 15.  Doc.

---

[10] "'[A] mere breach of contractual right is not a deprivation of property without constitutional due process of law .... Otherwise, virtually every controversy involving an alleged breach of contract by a government ... would be a constitutional case.'" *Coastland Corp.*, 734 F.2d at 178 (quoting *Medina Jimenez v. Almodovar*, 650 F.2d 363, 370 (1st Cir.1981)).

[11] "Michigan's guarantees of due process and equal protection are construed no more broadly than the federal guarantees."  *Gazette*, 212 Mich.App. at 173, 536 N.W.2d at 859 (citing cases).

14

Ent. 24 at 1-2.  WCCCD also points to plaintiff's October 26, 2011 complaint, wherein plaintiff represented she "is enrolled in the Nursing Program at [WCCCD][,]" Doc. Ent. 1-1 at 2 ¶ 3. Doc. Ent. 24 at 2.

Noting the Supreme Court's assumption that "even if Ewing's assumed property interest gave rise to a substantive right under the Due Process Clause to continued enrollment free from arbitrary state action," *Ewing*, 474 U.S. at 223, WCCCD maintains that plaintiff's complaint should be dismissed on the basis that she remains enrolled.  Doc. Ent. 24 at 2.

**iv.**     The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. XIV.  "The due process clause only protects those interests to which one has a 'legitimate claim of entitlement.'" *Brotherton v. Cleveland*, 923 F.2d 477, 480 (6th Cir. 1991) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

Whether plaintiff's claims are based upon procedural or substantive due process, she must first establish "the existence of a constitutionally protected life, liberty or property interest." *McGee v. Schoolcraft Community College*, 167 Fed.Appx. 429, 437 (6th Cir. 2006).  *See also Easley v. University of Michigan Bd. of Regents*, 627 F.Supp. 580, 582 (E.D. Mich. 1986) (Feikens, J.) ("He cannot prevail under either theory [procedural or substantive due process] without first proving his entitlement to a property interest protected by due process.").

The Court should conclude that plaintiff's original complaint fails to allege that she has a life, liberty or property interest entitled to constitutional protection.  To be sure, plaintiff's October 26, 2011 complaint alleges that she "has been substantively and procedurally denied her right to attend classes, obtain instruction, and be on campus as a student and to enjoy the rights

of a student to an education at [WCCCD][.]" Doc. Ent. 1-1 ¶ 4.  Elsewhere, she alleges that she

did not receive "the return of all her papers – graded."  Doc. Ent. 1-1 ¶ 14b.

However, as WCCCD points out, plaintiff had not been terminated from WCCCD's

Nursing Program at the time of her October 26, 2011 complaint.  In *McGee*, plaintiff appealed

"her termination from the Rainbow fieldwork assignment and subsequent dismissal from the

OTA program[;]" the seven-step Appeals Procedure for Academic Matters took its course; and

then plaintiff filed her October 18, 2002 complaint.  *McGee*, 167 Fed.Appx. at 431-432.  The

Court addressed McGee's due process claim on both substantive and procedural bases.  *McGee*,

167 Fed.Appx. at 436-438.  In each case, the Court noted that McGee's only assertion of an

interest protected by the due process clause was a "property interest in her continued enrollment

in SCC's OTA program."  *McGee*, 167 Fed. Appx. at 436; *see also id.* at 437.

Even if this was the property interest plaintiff Simmons intended to invoke in her October

26, 2011 complaint, *McGee* notes that, as to a substantive due process claim, "in the absence of

an equal protection violation there is 'no basis for finding that a medical student's interest in

continuing her medical school education is protected by substantive due process.'"  *McGee v.

Schoolcraft Community College*, 167 Fed.Appx. 429, 436-437 (6th Cir. 2006) (quoting *Bell v.

Ohio State University*, 351 F.3d 240, 251 (6th Cir.2003)).

Furthermore, even if such a property interest was protected, plaintiff's October 26, 2011

complaint is unsuccessful in asserting such a property interest, because at the time she filed her

complaint she was still enrolled at WCCCD and the appeal of WCCCD's decision was pending.

**b.      The allegations in plaintiff's original complaint are not sufficient to establish
"arbitrary conduct[.]"**

      **i.**      WCCCD argues that "[e]ven assuming *arguendo* that plaintiff has a property

interest, her complaint allegations are insufficient to establish 'arbitrary' conduct[.]"  Doc. Ent. 6 at 11-12.  Again, WCCCD relies upon *Ewing*, wherein the Supreme Court concluded that Ewing's claim "must be that the University misjudged his fitness to remain a student in the Inteflex program."  *Ewing*, 474 U.S. at 225.  The Supreme Court explained:

> When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment.  Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

*Ewing*, 474 U.S. at 225 (internal footnote omitted).

WCCCD likens the decisions at issue in *Ewing* and those at issue in the case at bar.  Specifically, WCCCD likens Ewing's failure of an important examination, which resulted in Ewing's dismissal from the University of Michigan, with plaintiff's failure of Nursing 116.  Therefore, WCCCD contends, "Plaintiff cannot seriously dispute that the decision at issue involves a 'genuinely academic decision.'"  Doc. Ent. 6 at 11.

In concluding that the allegations in plaintiff's October 26, 2011 complaint do not satisfy the *Iqbal* standard, WCCCD relies upon the September 16, 2011 letter from WCCCD Nursing Program signed by plaintiff and Instructor W. Wafford, R.N. (Doc. Ent. 1-1 at 10); the September 22, 2011 Mediation Committee meeting (Doc. Ent. 1-1 ¶ 4e); plaintiff's October 1, 2011 appeal (Doc. Ent. 1-1 at 12-14); plaintiff's October 10, 2011 reinstatement (Doc. Ent. 1-1 at 15); and plaintiff's October 16, 2011 or October 20, 2011 appeals of her failing grade (Doc. Ent. 1-1 at 16-17, Doc. Ent. 1-1 at 18-20), which has since been addressed.[12]  Doc. Ent. 6 at 11-

---

[12]By a letter dated February 14, 2012, Karen Jackson (WCCCD Associate Vice Chancellor of Transfer Programs) informed plaintiff that the Grade Appeal Committee met on February 3, 2012 and "[t]he decision of the Committee is to sustain the grade of an 'E'."  Doc.

12.

In addition, WCCCD notes Juarez's submission of communications which advise plaintiff of the reasons for WCCCD's decisions. Presumably, WCCCD is referring to Juarez's September 27, 2011 electronic mail regarding the Mediation Committee's findings (Doc. Ent. 1-1 at 11) and Juarez's October 10, 2011 letter to plaintiff (Doc. Ent. 1-1 at 15). Doc. Ent. 6 at 12.

Therefore, WCCCD contends, "[t]his is insufficient to establish 'arbitrary' action or any absence of 'professional judgment.'" According to WCCCD these allegations do not set forth "a plausible claim that [WCCCD] arbitrarily deprived her of a property interest." Doc. Ent. 6 at 11-12.

**ii.** Plaintiff responds that WCCCD's reliance upon *Ewing* is misplaced. Doc. Ent. 22 at 3. Specifically, plaintiff claims *Ewing* is distinguishable, because therein the Supreme Court recognized that "the faculty's decision was made conscientiously and with careful deliberation, based on an evaluation of the entirety of Ewing's academic career[,]" *Ewing*, 474 U.S. at 225. Doc. Ent. 24 at 3.

By comparison, plaintiff alleges, "she was prohibited from completing her classwork, or even the exams. Further, she had earned grades of 'satisfactory' in all of her classroom and clinical assignments. In addition, Defendant originally alleged that Plaintiff Simmons had violated the college's disciplinary policies, but later made a unilateral conversion to an allegation of academic failure." Doc. Ent. 22 at 4.

Noting the Supreme Court's deference to a "genuinely academic decision[,]" *Ewing*, 474 U.S. at 225, plaintiff points out that "the allegations in [her] case originated as a disciplinary

---

Ent. 14-1. This document was attached to WCCCD's March 22, 2012 filing. Doc. Ent. 14.

matter, and that the subsequent 'academic decision' should be viewed [with] suspicion." Plaintiff offers that her case is "a classic pretextual scheme to deliberately deprive Plaintiff of her constitutionally protected due process rights." Doc. Ent. 22 at 4. In support of this claim, plaintiff explains:

> From the onset, Plaintiff was told there were a "slew of complaints" against her which originated as a disciplinary action. However, when Plaintiff requested copies of the complaints and the identity of her accusers, which she was legally entitled to, as a matter of law, to enable her to defend herself, she was never provided any "incident reports." Further, within days, the action was unilaterally converted from a disciplinary action, which affords more constitutional protections, to an "academic" decision which does offer the same protections. The academic decision is also suspect because Plaintiff had grades of "satisfactory" in all of her classes and clinicals, and then was abruptly told she "was going to receive a failing grade." The decision that Plaintiff was "going to receive a failing grade" was made on October 10, 2011. However, the final examination period for the Fall 2011 period was not until December 16-19, 2011.

Doc. Ent. 22 at 4-5.

    **iii.**    "[T]he Fourteenth Amendment only protects against the State depriving one of life, liberty, or property *without due process of law*." *Orr v. Trinter*, 444 F.2d 128, 134 (6th Cir. 1971) (emphasis added). For the reasons stated in WCCCD's reply (Doc. Ent. 24), the Court should conclude that, even if plaintiff had a property interest in her continued enrollment in WCCCD's Nursing Program, the allegations in her original complaint are not sufficient to establish "arbitrary" conduct on the part of WCCCD.

    **First, WCCCD argues that it made academic decisions, and the Court should conclude this is substantiated by plaintiff's October 26, 2011 complaint.** WCCCD notes "the distinction that the state and federal courts have recognized between decisions to suspend or dismiss a student for disciplinary purposes (for which a hearing is required) and similar actions taken for academic reasons[,]" *Hill v. University of Kentucky*, No. 92-5158, 1992 WL 318611,

*4 (6th Cir. Nov. 4, 1992) (citing *Board of Curators, University of Missouri v. Horowitz*, 435 U.S. 78 (1978)).  However, WCCCD contends that, based upon the allegations in the October 26, 2011 complaint, "the decisions at issue in this case are demonstrably 'academic' and, therefore, fall within the *Ewing* case rule that Courts must defer to the judgment of academic institutions regarding such decisions."  Doc. Ent. 24 at 2.

Specifically, WCCCD points to plaintiff's allegation that she was placed on probation by issuance of Nurse Wofford's September 16, 2011 letter (Doc. Ent. 1-1 at 10), which plaintiff alleges "was factually incorrect and made several unsubstantiated allegations/statements."  Doc. Ent. 1-1 at 3 ¶ 4c.  Even so, Nurse Wofford's September 16, 2011 letter set forth six (6) remedial steps and notified plaintiff that "any violation of the above will result in me not meeting the objectives of the course which will result in a course failure and possible dismissal from the program."  Doc. Ent. 1-1 at 10.  Even though two of the concerns listed were "[d]emonstrating disruptive behavior in the clinical setting[,]" and "[i]nappropriate communication skills with faculty . . . and peers[,]" Doc. Ent. 1-1 at 10, WCCCD maintains that "the September 16 letter makes no reference to any alleged violation of the Defendant's 'disciplinary policies.'"  Citing *Hill*[13] and *Horowitz*,[14] WCCCD contends that "[a] nursing program like [WCCCD's] may require

---

[13]In *Hill*, the plaintiff alleged that "his receipt of a failing grade in his surgery clerkship course constituted a violation of his substantive and procedural due process rights."  *Hill*, 1992 WL 318611, *1.  The syllabus provided that "The Department of Surgery reserves the right to assign an unsatisfactory or failing grade for the entire clerkship if the student performs in an unsatisfactory manner in terms of professional behavior, interactions with patients, or on the examinations.'"  *Hill*, 1992 WL 318611, *2.  The University's Appeals Board "unanimously [found] that Don Hill's grade in SUR-831 should stand. . . . We believe that Dr. Schwartz made 'a fair and just academic evaluation' of Mr. Hill's unprofessional behavior."  *Hill*, 1992 WL 318611, *3.

With respect to substantive due process, the Court stated: "The record supports the District Court finding that it was eminently apparent that defendant Schwartz's decision to

students - who are being trained to provide medical services to patients and doctors - to exhibit professional behavior and appropriate communication skills in a clinical setting as an academic requirement as a matter of law."  Doc. Ent. 24 at 3.

Likewise, WCCCD attacks the relevance of a disciplinary versus academic decision under *Ewing*. Namely, WCCCD relies upon *Wheeler v. Miller*, 168 F.3d 241 (5th Cir. 1999), wherein, with respect to substantive due process, the Fifth Circuit stated:

> Wheeler alleged that his poor grades, the remediation plans, and the ultimate decision to deny him a doctorate were all the result of the false accusations of cheating. Factually, we conclude that a rational trier of fact could not so find, as discussed above. Legally, for purposes of substantive due process, we do not see as relevant Wheeler's characterization of the actions taken as all linked to the cheating accusations. Even if Wheeler's characterization were correct, the actions taken by TWU were nonetheless "genuinely academic decision [s]" under the *Ewing* substantive due process standard. While the Court in *Horowitz* noted that procedural due process requirements for students may vary depending on whether the action taken is "disciplinary" versus "academic," all of the decisions taken by TWU-those regarding grades, the remediation plans, and the award of a degree-are genuine academic decisions under *Ewing. Ewing*, in delineating a student's substantive due process rights, did not hold that genuine academic decisions and the standard for judicial review of such decisions are limited only to those decisions based purely on test scores or some other objective academic criteria. It noted that the academic decision in issue might reasonably have been based on university concerns about the student's "lack of judgment and an inability to set priorities," and that the university promotion and review board "was uniquely positioned to observe [the student's] judgment, self-discipline, and ability to handle stress, and was thus especially well situated to make the necessarily subjective judgment of [his] prospects for success in the medical

---

assign plaintiff a failing grade was not arbitrary or such a substantial departure from accepted academic norms as to demonstrate that Dr. Schwartz did not actually exercise professional judgment."  *Hill*, 1992 WL 318611, *4.

[14]"The record, however, leaves no doubt that respondent was dismissed for purely academic reasons, a fact assumed without discussion by the lower courts. Personal hygiene and timeliness may be as important factors in a school's determination of whether a student will make a good medical doctor as the student's ability to take a case history or diagnose an illness." *Horowitz*, 435 U.S. at 91 n.6.

profession."

*Wheeler*, 168 F.3d at 250 (internal footnote omitted); Doc. Ent. 24 at 3-4.

Furthermore, WCCCD attacks the significance of the difference between plaintiff's mid-semester failing grade, issued on October 10, 2011 (Doc. Ent. 1-1 at 15),[15] and Ewing's end of the semester termination based upon a failing grade.  According to WCCCD, plaintiff's October 26, 2011 complaint "contains no factual basis for her implied assertion that securing a passing grade after a final examination at the end of a semester is all that was required to pass the clinical Nursing 116 course."  Here, WCCCD alleges that plaintiff "was failing to meet six 'objectives' of Nursing 116."  According to WCCCD, plaintiff "did not subsequently satisfy these requirements and was removed from the Nursing Program."  She was reinstated on October 10, 2011, but was "given a failing grade - mid-semester."  Doc. Ent. 24 at 4; *see also* Doc. Ent. 1-1 at 15 (Juarez's Oct. 10, 2011 letter).  It is WCCCD's position that the distinction between Ewing's academic decision being made at the end of the semester and plaintiff's academic decision being made mid-semester is one "without a difference[.]"  Doc. Ent. 24 at 4.

Having shown that the academic nature of WCCCD's decision(s) at issue is supported by plaintiff's October 26, 2011 complaint, the Court should agree with WCCCD's position that plaintiff has not shown that there was "a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment[,]" *Ewing*, 474 U.S. at 225.  Doc. Ent. 24 at 4.

**Second, the Court should agree with WCCCD that, under *Iqbal*, the allegations in**

---

[15]The WCCCD Student Handbook explains that "there are two long semesters in the Fall and Spring (16 weeks each), and an assortment of regular length and shorter length semesters in the Summer."  Doc. Ent. 1-4 at 12.

22

**plaintiff's October 26, 2011 complaint "are insufficient to establish a due process violation, even assuming . . . that the decisions at issue are deemed 'disciplinary[,]'" and show that "[p]laintiff was provided all the due process required under the circumstances."  Doc. Ent. 24 at 5.**

As WCCCD notes, where the university's actions are properly characterized as "disciplinary," "the additional procedures required under federal law amount to nothing more than an informal hearing, that is, 'an 'informal give-and-take' between the student and the administrative body dismissing him that would, at least, give the student 'the opportunity to characterize his conduct and put it in what he deems the proper context.''" *Wheeler*, 168 F.3d at 248 -249 (quoting *Horowitz*, 435 U.S. at 86).  Doc. Ent. 24 at 4-5.

In support of its position, WCCCD cites the notice provided by Nurse Wofford's September 16, 2011 letter (Doc. Ent. 1-1 at 10); the Mediation Committee's September 22, 2011 meeting (Doc. Ent. 1-1 ¶ 4e) and the memorialization of its discussion in Juarez's September 27, 2011 electronic mail, which noted that the Mediation Committee "discussed [her] experiences within the clinical setting, [her] complaint, and the complaints of fellow students and faculty[,]" and that plaintiff's conduct warranted her removal from the Nursing Program (Doc. Ent. 1-1 at 11); plaintiff's October 1, 2011 appeal (Doc. Ent. 1-1 at 12-14); and Juarez's October 10, 2011 letter, by which plaintiff was reinstated in the Nursing Program at WCCCD but received an "E" in NUR 116 (Doc. Ent. 1-1 at 15).

Even though the Sixth Circuit has noted that "'[t]he interests protected by substantive due process are of course much narrower than those protected by procedural due process[,]'" *McGee v. Schoolcraft Community College*, 167 Fed.Appx. 429, 437 (6th Cir. 2006) (quoting *Bell v. Ohio*

23

*State University*, 351 F.3d 240, 249-50 (6th Cir.2003)), and even if plaintiff has a property

interest in continued enrollment in WCCCD's Nursing Program, the October 10, 2011 letter

(Doc. Ent. 1-1 at 15) attached to her October 26, 2011 complaint (Doc. Ent. 1-1 at 2-9) shows

that WCCCD did not deprive her of that interest without the process to which she was due.  *See*

*McGee*, 167 Fed.Appx. at 437 ("the undisputed facts show that SCC did not ultimately deprive

Plaintiff of that interest[,]" where SCC "repeatedly offer[ed] her an opportunity to be reinstated

in the OTA program[,]" and "[t]he fact that the terms were not acceptable to Plaintiff does not

change the fact that SCC offered to restore to her the property interest she claims she was

deprived of, her continued enrollment.").

Finally, there remains the possibility that plaintiff is attempting to allege a property

interest in a passing grade in NUR 116.  At least one court has stated that "a student handbook

setting forth a grievance procedure to contest an allegedly capricious or improper grade can

establish a property interest in non-arbitrary grading."  *Disesa v. St. Louis Community College*,

79 F.3d 92, 95 (8th Cir. 1996) (citing *Ikpeazu v. University of Nebraska*, 775 F.2d 250, 253 (8th

Cir.1985) (per curiam)).  This report assumes, *arguendo*, that the WCCCD Student Handbook

establishes such a right.[16]

To be sure, plaintiff's complaint does take issue with WCCCD's September 22, 2011

refusal to provide her with information about complaints (Doc. Ent. 1-1 ¶ 4e; *see also* Doc. Ent.

---

[16]For example, I note that the WCCCD Student Handbook provides: "Based on
professional judgment, the instructor is solely responsible for the semester/session grade
assigned.  Normally, no instructor may be directed to change a grade, however, where mistakes,
fraud or bad faith by the instructor is proven, the instructor may be directed to change the
resulting grade.  The burden for the existence of mistakes, fraud or bad faith on the part of the
instructor is the responsibility of the student."  Furthermore, it sets forth "Complaint Procedures:
Academic and Grade Regulations."  Doc. Ent. 1-5 at 14.

1-1 ¶ 5b); alleges that there was "no opportunity to defend herself before any committee or other administrative authority (Doc. Ent. 1-1 ¶ 8); alleges that she "could not get any information," (Doc. Ent. 1-1 ¶ 12); alleges that she "has received no notice from any instructor that she was failing or had failed or even had yet received any grade for NUR 116, which class had not yet finished when she received the [October 10, 2011 (Doc. Ent. 1-1 at 15)] letter from administrator Juarez telling her she had failed[,]" (Doc. Ent. 1-1 ¶ 13); and alleges that she was not provided with copies of "the alleged 'receiving reports' or who gave the report(s) or what they contained," (Doc. Ent. 1-1 ¶ 14c), etc.[17]

However, as noted below, neither plaintiff's complaint nor her response specify which WCCCD policies and/or procedures have been violated.  Furthermore, the September 16, 2011 letter set forth six (6) concerns and six (6) remedial measures (Doc. Ent. 1-1 at 10) and the October 10, 2011 letter (Doc. Ent. 1-1 at 15) explained that she would receive a failing grade in NUR 116, because she had "failed to meet all the objectives in the clinical portion of NUR 116[.]" These do not support a conclusion that WCCCD's decision to assign plaintiff the failing grade of "E" in NUR 116 was "arbitrary" or that "there was no rational basis for the College's decision or that the decision was motivated by bad faith or ill will." *Disesa*, 79 F.3d at 95. Finally, at the time plaintiff filed her October 26, 2011 complaint, her grade appeals were pending. *See* Doc. Ent. 1-1 at 16-17 (dated October 16, 2011, received October 18, 2011), Doc. Ent. 1-1 at 18-20 (dated and received October 20, 2011).

---

[17] Furthermore, plaintiff's May 29, 2012 response represents that, to date, she has been denied requested copies of complaints (Doc. Ent. 22 at 2) and that "when [she] requested copies of the complaints and the identity of her accusers, which she was legally entitled to, as a matter of law, to enable her to defend herself, she was never provided any 'incident reports[,]'" Doc. Ent. 22 at 4-5.

c.     **Plaintiff's original complaint fails to allege a state law breach of contract claim.**

As noted above, plaintiff's October 26, 2011 complaint alleges that WCCCD's Rules and Procedures have been violated (Doc. Ent. 1-1 ¶ 4) and that certain denials of due process occurred "[c]ontrary to the written procedures of the [WCCCD] Student Handbook or Nursing Program Handbook[,]" (Doc. Ent. 1-1 ¶ 5).

WCCCD argues that "[p]laintiff has failed to allege a state law breach of contract claim[,]" Doc. Ent. 6 at 12-13.  Relying upon *Burke v. 401 N. Wabash Venture, LLC*, No. 08 C 5330, 2010 WL 2330334 (N.D. Ill. June 9, 2010),[18] and *Otani v. State Farm Fire & Cas. Co.*, 927 F.Supp. 1330 (D.Hawai'i,1996),[19] and citing ¶¶ 4-5 of plaintiff's complaint (Doc. Ent. 1-1 ¶¶ 4-5), WCCCD contends that, "although [plaintiff] alleges 'violation' of [WCCCD's] 'Rules and Procedures,' she fails to allege that they constitute a 'contract' - and, most significantly, fails to identify any specific rule or procedure allegedly violated."  Doc. Ent. 6 at 12.  Additionally, WCCCD contends that plaintiff "did not even attach to the Complaint a copy of the 'Rules and Procedures' upon which she relies, leaving the Court to speculate about the specific provisions upon which she relies."  Doc. Ent. 6 at 12-13.

Furthermore, relying upon *Lytle v. Malady*, 458 Mich. 153, 579 N.W.2d 906 (1998),[20]

---

[18]"The Court fails to see how, post-*Iqbal*, a plaintiff could state a claim for breach of contract without alleging which provision of the contract was breached."  *Burke*, 2010 WL 2330334, *2.

[19]"In breach of contract actions, []the complaint must, at minimum, cite the contractual provision allegedly violated. Generalized allegations of a contractual breach are not sufficient." *Otani*, 927 F.Supp. at 1335.

[20]"This contractual disclaimer clearly communicated to employees that the employer did not intend to be bound by the policies stated in the handbook."  *Lytle*, 458 Mich. at 166, 579 N.W.2d at 911.

26

*Heurtebise v. Reliable Business Computers*, 452 Mich. 405, 550 N.W.2d 243 (1996),[21] and

*Tobias v. University of Texas at Arlington*, 824 S.W.2d 201 (Tex.App.–Fort Worth 1991),[22]

WCCCD adds that plaintiff "should not be permitted to amend her Complaint to allege 'breach

of contract' - and this case should not be remanded to state court – because the amendment

would be futile." Doc. Ent. 6 at 13 n.1. Specifically, WCCCD notes the Student Handbook's

provision that "Nothing in this document should be construed as a contract, entitlement or

promise." Doc. Ent. 1-5 at 13 (p. 39).

By her response, plaintiff contends that WCCCD "violated the WCCCD rules and

procedures during the instigation and the processing of the alleged complaints against her."

Plaintiff contends that she "should be allowed a reasonable period of time to conduct discovery

based on her claims, and this court should not summarily dismiss Plaintiff's complaint on the

pleadings without allowing minimal discovery." Doc. Ent. 22 at 5.

However, the Court should agree that plaintiff's October 26, 2011 complaint fails to state

a state law breach of contract claim upon which relief may be granted. To be sure, plaintiff's

complaint attempts to narrow the universe of procedures at issue as those "regarding either

complaints, grievances, or grade appeals, or any other similar process to address problems

concerning students, their behavior or their academic progress," Doc. Ent. 1-1 ¶ 5. And, plaintiff

contends, the October 10, 2011 letter (Doc. Ent. 1-1 at 15) was issued without "hearing and

---

[21]"[T]he defendant did not intend to be bound to any provision contained in the
handbook. Consequently, we hold that the handbook has not created an enforceable arbitration
agreement with respect to this dispute." *Heurtebise*, 452 Mich. at 414, 550 N.W.2d at 247.

[22]"In light of the express disclaimer in the document alleged to be a contract, no
enforceable contract existed in the present case." *Tobias*, 824 S.W.2d at 211.

processing the Plaintiff's appeal according to the published appeal procedures of the school[.]"
Doc. Ent. 1-1 ¶ 11.

 However, the Student Handbook contains ten (10) sections, one of which is titled
"Academics" (Section IX), within which there are subsections titled, "Requesting Grade
Changes" and "Official Procedure for Grade Appeal."  Doc. Ent. 1-5 at 9-10 (pp. 35-36).
Another section is titled, "Student Code of Conduct" (Section X), within which there are
subsections titled, "Complaint Procedures:  Academic and Grade Regulations," "Complaint
Procedures: Code of Ethics Violations,"[23] and "Complaint Procedures: Student Code of
Conduct[,]"[24] Doc. Ent. 1-5 at 14-20 (pp. 40-48).  There also appear to be subsections titled
"EEOC/Non-Discrimination,"[25] "General Complaint Procedures[,]" and "Disciplinary Actions."
Doc. Ent. 1-4 at 3 (Table of Contents).  Neither plaintiff's complaint nor her response specify
which WCCCD policies and/or procedures have been violated.

 Additionally, to the extent any breach of contract claim is based upon the WCCCD

---

[23]The steps of this subsection refer to the Mediation Committee and "Step 3: Mediation
Committee Meeting" provides in part that "[t]he MC Chairperson will put his or her
determination in writing and will forward copies to the student and instructor within seven (7)
days following the MC meeting."  Doc. Ent. 1-5 at 16-17 (pp. 42-43). Among the potential
disciplinary actions for a guilty finding of violating scholastic ethics is "The Vice Chancellor of
Educational Affairs or designee may suspend a student from classroom or class activities prior to
a mediation hearing for a reasonable period of time not to exceed five (5) working days."  Doc.
Ent. 1-5 at 17 (p. 43).

[24]Within this subsection, Step 2 is described as "Notice to the Student[,]" and Step 3
provides the option for an appeal to the Student Conduct Review Committee (SCRC).  Doc. Ent.
1-5 at 20 (pp. 48-49).

[25]The online version of the EEOC/Non-Discrimination subsection states in part:  "No
person making a good faith report of discrimination or harassment or assisting in an investigation
of such a report will be subject to retaliation for the making or investigation of such report."  See
http://www.wcccd.edu/students/pdfs/studenthandbook.pdf.

Student Handbook, the Court notes that the version revised January 2010, represents that "[t]his handbook is for informational use only and does not constitute a contract.  WCCCD reserves the right to add or delete, without notice, any course offering or information contained in this handbook."  Doc. Ent. 1-5 at 22 (p. 53).

## III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 7/26/12

29

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on July 26, 2012.

s/Eddrey Butts
Case Manager

30